**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**STEVE FREEMAN, as administrator of**
**the Estates of DORIS VANN, deceased;**
**and DEBORAH THORNTON, on behalf**
**of the surviving minor children of**
**DORIS VANN**                                                                 **PLAINTIFFS**

**V.**                                              **Civil Action No. 4:08-CV-139-HTW-LRA**

**CLARKE COUNTY and MARY**
**MCCLENDON, in her individual capacity**                         **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs Steve Freeman, as administrator of the Estate of Doris Vann,

deceased, and Deborah Thornton, on behalf of the surviving minor children of Doris

Vann, filed this lawsuit on November 26, 2008, under Title 42 U.S.C. § 1983[1] against

defendants Clarke County, Mississippi and Mary McClendon in her individual capacity.

Clarke County is a political subdivision of the State of Mississippi which has 82

counties, of which Clarke is one.[2]  Mary McClendon during the time of the incidence in

question was jail administrator of Clarke County jail.  Plaintiffs contend that the

defendants' conduct egregiously violated the decedent Doris Vann's rights under the

---

[1] Title 42 U.S.C. § 1983 states in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any
State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of
the United States or other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper proceeding for redress, [. . .].

[2] *See* 3 Jeffrey Jackson & Mary Miller, <u>Encyclopedia of Mississippi Law</u> § 19:25 (2012).

1

Fourteenth Amendment to the United States Constitution,[3] the Americans with Disabilities Act (ADA),[4] and § 504 of the Rehabilitation Act,[5] causing Doris Vann to die from acute asthma and pulmonary emboli during her incarceration in the Clarke County jail. The authorities at Clarke County jail, especially employee Mary McClendon, say plaintiffs, knowingly denied Doris Vann medical treatment despite Vann's repeated and ongoing pleas for help. The plaintiffs and defendants have settled this lawsuit. The only remaining dispute concerns the attorneys' fees.

Neither plaintiffs nor defendants are involved in this fee dispute before the court; only plaintiffs' attorneys are still litigating, and with each other. First, we have James V. Doyle, Jr. ("Doyle"), the attorney who worked on this case while employed by Wiggins, Childs, Quinn & Pantazis, LLC ("WCQP"). Then we have WCQP which filed an attorneys' charging lien after the plaintiffs discharged the firm and hired Doyle when he left the employment of WCQP and founded the Doyle Law Firm, P.C.

---

[3] U.S. CONST. amend. XIV, § 1 states in pertinent part:
No State shall [. . .] deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[4] The Americans with Disabilities Act, Title 42 U.S.C.A. § 12132 states:
Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
    This federal statute "prohibits discrimination against the disabled by public entities [. . .]." *Barnes v. Gorman*, 536 U.S. 181, 184, 122 S. Ct. 2097, 2100, 153 L. Ed. 2d 230 (2002).

[5] Section 504 of the Rehabilitation Act, Title 29 U.S.C.A. § 794 "prohibits discrimination against the disabled by recipients of federal funding, including private organizations [. . .]. *Barnes v. Gorman*, 536 U.S. 181, 184-85, 122 S. Ct. 2097, 2100, 153 L. Ed. 2d 230 (2002).
    The statute states in pertinent part that:
No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance [. . .].

Before the court are a number of motions regarding the appropriate division of the attorneys' fees. The motions are as follows: (1) a motion to enforce attorneys' fee lien [docket no. 31] filed by WCQP; (2) a motion to dismiss attorneys' charging lien [docket no. 39] filed by Doyle; (3) a motion supplementing motion to enforce attorneys' fee lien [docket no. 41] filed by WCQP; (4) a motion to compel [docket nos. 47] filed by WCQP; (5) another motion to compel [docket no. 48] filed by WCQP; (6) a motion for discovery [docket no. 54] filed by WCQP; (7) a motion for leave to file response [docket no. 56] filed by Doyle; (8) a motion for extension of time [docket no. 64] filed by WCQP; (9) a motion to strike response [docket no. 65] filed by Doyle; and (10) a motion to stay proceedings [docket no. 69] filed by Doyle.

Having considered the thrust of the pleadings, the several oral arguments of the attorneys, and the applicable law, this court grants WCQP's motion to enforce its attorneys' fee lien [docket no. 31] and Doyle's motion for leave to file response [docket no. 56]. This court denies Doyle's motion to dismiss attorneys' charging lien [docket no. 39]. The court denies as moot WCQP's two motions to compel and motion for discovery [docket nos. 47, 48, and 54]. This court grants WCQP's motion for extension of time [docket no. 64] and denies Doyle's motion to strike response [docket no. 65]. This court grants WCQP's motion to supplement [docket no. 41], and awards WCQP $241,728.79 in attorneys' fees and $6,913.91 in expenses. The balance of the attorneys' fees held in this court's register will be released to the Doyle Law Firm, P.C., namely $98,734.30 in attorney's fees and $2623 in expenses.

On December 12, 2012, this court held a telephonic conference with the parties, announced the above rulings, and stated that the court would follow-up with a written

opinion.  In anticipation of this forthcoming written ruling, Doyle has filed a motion to

stay the release of the funds held in the court's registry for 30 days to allow the Doyle

Law Firm to evaluate the rationale of this court's order [docket no. 69] and to determine

if that firm will pursue relief from the order.  The court, over WCQP's objection, grants

this motion and directs the Clerk of Court for the Southern District of Mississippi to

delay disbursement of the funds in this case until further order of this court.

### I.  Facts and Procedural History

On September 14, 2006, the plaintiffs, herein, engaged Stephen K. Winters

("Winters"), an attorney in Alabama, to prosecute this case against Clarke County,

Mississippi and Mary McClendon after the death of Doris Vann.  Winters and the

plaintiffs entered into a contingency-fee agreement which would pay the attorney 50%

of the gross amount of any recovery obtained plus expenses.  The agreement provided

that in the absence of any recovery, the attorney would receive no fees or expenses.

Representation agreement, docket no. 59-1.

After entering the representation agreement, Winters referred the matter at some

time in 2007[6] to the law firm of WCQP, also based in Alabama.  Subsequently, on

November 26, 2008, WCQP filed the complaint in federal court in the Southern District

of Mississippi, Jackson Division.

The attorneys of record for the plaintiffs at that time were Doyle and Samuel

Fisher, a WCQP partner admitted to practice in Alabama.  Samuel Fisher was admitted

---

[6]  WCQP says that this case was referred to it on September 7, 2007.  Former WCQP
associate, James Doyle, claims the case was referred to WCQP on June 30, 2008.  WCQP's
time entries show time allocated to this lawsuit beginning on July 30, 2007. Docket no. 41-4.

*pro hac vice* in this case.  Doyle, an associate at WCQP, who was admitted to practice in Mississippi, worked on the case from the time it was referred to WCQP until he left the firm to start his own practice on April 23, 2010.

The last pleading filed by the plaintiffs on the merits of the case was a reply brief to a motion for summary judgment, filed on March 19, 2010, while Doyle was still employed at WCQP.  On or around May 5, 2010, after Doyle had left his employment at WCQP, the plaintiffs discharged WCQP.  Plaintiff counsel's response, docket no. 43 at 2.  On June 11, 2010, WCQP filed an attorneys' charging lien, claiming that substantial work on this case had been performed by attorneys employed by WCQP, including Doyle.

Doyle continued to represent the plaintiffs as the principal of the newly-created Doyle Law Firm, P.C ("Doyle Firm").  On October 4, 2010, Doyle scheduled mediation which ended in settlement.  This court entered an order of dismissal without prejudice on December 29, 2010, but retained jurisdiction to enforce the settlement.  Docket no. 30.  An order dismissing plaintiffs' claims with prejudice was entered on October 24, 2011.  Docket no. 53.

Three minor children survived the plaintiffs' decedent.  An estate was opened for the decedent in the Probate Court of Choctaw County, Alabama.  That court initially approved the settlement on January 14, 2011.  Docket no. 43-1 at 2.  The court later amended that order on June 30, 2011, to include a review of the attorneys' fees and the amount of the settlement which was to be paid to the estate of plaintiffs' decedent.  Docket no. 43-1.  During that review, the Probate court thoroughly studied the history and complexity of the litigation and heard from Doyle, as well as from the appointed

Guardians *ad Litem* who were there to protect the interests of the decedent's minor children. The Guardians made recommendations. Thereafter, the Probate court approved the settlement agreement and the payment of the 50% contingency fee to the attorneys in its June 30, 2011, order. Amended order approving settlement, docket no. 43-1. The court stated in that order that "[t]he . . . contingency-fee agreement between the Administrator of the Estate and plaintiffs' counsel is appropriate and justified due to the unique nature and issues involved in the underlying litigation and the attorneys' fee pursuant to said agreement is a reasonable fee." *Id.*

Fifty percent of the settlement amount came to $350,000. Since settlement of this case, Doyle and WCQP have not been able to agree on a division of this sum, with each claiming to be entitled to the majority of the money.

On January 18, 2011, WCQP filed a motion to enforce attorneys' fee lien and stay the case for 14 days [docket no. 31] to allow the attorneys to reach an agreement regarding fees. The attorneys were not able to resolve the dispute at that time. Doyle, opposing WCQP's lien, filed a motion to dismiss the attorneys' charging lien [docket no. 39] on April 4, 2011.

On May 4, 2011, WCQP filed a supplemental motion to enforce attorneys' fee lien [docket no. 41], with supporting documentation including attorney affidavits, time entries, and expenses. WCQP says that its time entries are incomplete because Doyle failed to keep accurate time entries when he worked at WCQP. WCQP, in its motion to supplement, asked for the lodestar amount of attorneys' fees multiplied by a factor of 1.5. The enhancement to the lodestar, says WCQP, is merited because of the successful results, complexity and difficulty of prison litigation, and undesirability of the

case.  WCQP also has requested costs.

In September of 2011, WCQP filed a supplemental reply associated with its initial motion to enforce its attorneys' fee lien.  In this pleading, WCQP revised its position, asking this court to divide the fees in proportion to the services performed by each firm, instead of applying the lodestar.  The firm cites the Mississippi Rules of Professional Conduct and principles of equity to support its position.

WCQP also alleges that Doyle was operating under a contingency-fee agreement which produced excessive fees and paid Doyle an unearned "windfall."  The fee agreement, says WCQP, yielded a fee that was not reasonable, as required by Title 42 U.S.C. § 1988, which governs awards of attorneys' fees in federal civil rights cases. The court should review the total fees, argues WCQP, and reduce the total contingency-fee if the court finds it to be excessive or unreasonable.

On September 30, 2011, this court entered an agreed order as to disposition of the settlement proceeds [docket no. 52].  The court ordered that the undisputed amount of the settlement proceeds be deposited into the registry of the Probate Court of Choctaw County, Alabama, for distribution to the plaintiffs.  By this court's order the disputed attorneys' fees were deposited into this court's registry, that is with the United States District Clerk for the Southern District of Mississippi, until resolution of the division of the fees.

In October of 2012, this court ordered attorney Doyle to provide additional information to the court and to WCQP, including the unredacted fee contract, final settlement agreement, time entries for work done by Doyle on this case after leaving WCQP, and Doyle's expenses.  Doyle submitted this information to the court on

October 24, 2012 [docket no. 59]. WCQP filed its response and objections to the information submitted by Doyle on November 19, 2012 [docket no. 61].

This court must decide how to calculate attorneys' fees when the plaintiffs have discharged one law firm due to no fault of that firm and completed the litigation with a new firm, a simplistic interrogatory which camouflages the three latent questions which must be recognized and answered before this court may reach a solution: (1) whether the jurisprudence of Title 42 U.S.C. § 1988 governs the outcome of this dispute; (2) if not, whether principles of *quantum meruit* apply; and (3), if so, whether this court should apply the law of the state of Alabama or that of Mississippi. This court's reasoning on these matters is set out below.

## II. Attorneys' Fee Awards in Section 1983 Actions

Title 42 U.S.C. § 1988,[7] governs fee awards in cases brought under a number of the federal civil rights statutes, including lawsuits brought under § 1983, such as this lawsuit. Section 1988 serves an important purpose "to ensure that federal rights are adequately enforced." *Perdue v. Kenny*, ___ U.S. ____, 130 S.Ct. 1662, 1671, 176 L.Ed.2d 494 (2010). The "American Rule" in litigation is that parties to lawsuits in the United States' legal system must bear their own costs and pay their own attorneys. *Id* (citations omitted). Through § 1988, Congress has enacted a fee shifting statute which awards a prevailing party "a reasonable attorney's fee as part of the costs" in certain civil rights lawsuits, including § 1983. *Id*.

---

[7] Title 42 U.S.C.A. § 1988 states in pertinent part:
In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, [. . .], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, [. . .].

8

Section 1988 jurisprudence has developed the lodestar method for calculating attorneys' fees. This lodestar method directs the court to multiply "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate" to produce "a reasonable attorney's fee." *Hensley v. Eckerhardt*, 461 U.S. 424, 432, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). While the United States Supreme Court has favored "the lodestar approach" when determining a "reasonable fee" under § 1988, this statutory provision does not invalidate contingency-fee agreements between attorneys and clients. *Venegas v. Mitchell*, 495 U.S. 82, 110 S.Ct. 1679, 87109 L.Ed.2d 74 (1990). Both the United States Supreme Court and the Fifth Circuit Court of Appeals have held that § 1988 "controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer." *Venegas*, 495 U.S. at 90; *Gobert v. Williams*, 323 F.3d 1099, 1100 (2003).

Under § 1988, this court must ensure that the fee a defendant pays to the plaintiffs' lawyer is reasonable. *Venegas*, 495 U.S. at 90. That concern, *sub judice*, has been resolved by the parties through their settlement, and by an Alabama Probate court which has ruled that settlement to be fair. The defendants herein agreed to settle the case for a total sum and have paid that sum into the courts' registries. The plaintiffs have submitted the settlement agreement, inclusive of the attorneys' fee arrangement, to the Probate Court of Choctaw County, Alabama. That Probate court approved the attorneys' fees in this case as reasonable.[8]

---

[8] This court is not necessarily endorsing a 50% contingency-fee as reasonable. The Probate court, though, has ruled on the reasonableness of this fee. The plaintiffs apparently concur and have not challenged the 50% contingency-fee arrangement. Neither have the court-appointed Guardians for the minor children objected. The Probate court which has the

This court concludes, then, that the thrust and spirit of § 1988 is now satisfied. A settlement of the entire lawsuit has occurred. That part of the settlement which addresses attorneys' fees which defendants have to pay has been adjudicated by the Probate court as reasonable. What remains is a dispute between plaintiffs' present and former attorneys, not any dispute between a prevailing plaintiff and a defendant, as § 1988 was crafted to address. Therefore, this court reasons that in its search for juridical harmony and fairness here, this court is not chained to the § 1988 structure of fee determination, but may freely adopt it or reject its approach in favor of some other appropriate formula.

### III. Division of Attorneys' Fees

WCQP maintains that all of the substantive research, investigation, depositions, and drafting of pleadings had been completed before Doyle left WCQP. Because of Doyle's inadequate time entries, WCQP says, it cannot completely recover fees for that time applying the lodestar method championed by § 1988.

WCQP initially asked the court to award it all of its requested fees–a total of $140,700–calculated using the lodestar method. WCQP has provided what time entries it has and attorney affidavits regarding hourly rates to support this award . WCQP also requests $6,913.91 in costs, and has submitted details in support. WCQP recognizes that its attorneys' billing rates are higher than those approved in Mississippi § 1983 litigation, and argues that it should not be limited to the local attorney rates because of an alleged dearth of attorneys in the Southern District of Mississippi who are willing or

---

responsibility to protect the interest of the minor children involved here has made its determination based on the facts of this case and the absence of objections.

able to take on a prisoner civil rights case such as this.

WCQP has amended its request and now asks this court to divide the fees in proportion to the amount of time and services contributed by each law firm, requesting 73% of the total attorneys' fees. WCQP cites Rule 1.5(e) of the Mississippi Rules of Professional Conduct[9] and principles of equity in support of splitting the fees in this way.

Doyle finds the lodestar method friendly for calculating WCQP's fees, especially since he has challenged many of the hours submitted by WCQP and its hourly rates under Mississippi § 1988 standards. According to his calculations, Doyle opines that WCQP is due $52,334.50 in attorneys' fees and $5,910.15 in costs. Of course, this will provide a balance of $297,665.50, all to go to Doyle.

As an alternative to the lodestar method, Doyle says that WCQP should be paid in *quantum meruit* for the services it provided. Without a contract requiring a contingency-fee or a proportional division of the total fees, says Doyle, WCQP has no legal basis to request a share of the fees beyond the reasonable value of the hours or effort it expended in the litigation, as calculated by multiplying WCQP's hours by a reasonable rate.

So, both parties envision *quantum meruit* as a possible, appropriate approach

---

[9] Rule 1.5(e) of the Mississippi Rules of Professional Conduct states:
A division of fee between lawyers who are not in the same firm may be made only if:
    (1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;
    (2) the client is advised of and does not object to the participation of all the lawyers involved; and
    (3) the total fee is reasonable.

here owing to certain features of the case. This court is hesitant to approve WCQP's requested hourly rates without more proof of such rates awarded in these type cases. This court also is reluctant to hold that this case is "undesirable" and would fail to attract competent attorneys in Mississippi to litigate the underlying issues. Further, this court, under these findings, questions whether a lodestar method would communicate a true comparison of the value of the hours expended by each law firm towards the ultimate result, as well as the relative risk borne by the respective law firms during the litigation. This court has also considered the likelihood that Doyle will receive a windfall should this court apply the lodestar method to calculate WCQP's fees. H

## A.  Choice of Law

The underlying matter in this case was premised on the federal civil rights statute of Title 42 U.S.C. § 1983. Generally, attorneys' fees in such matters are governed by the federal fee shifting statute found at Title 42 U.S.C. § 1988. In this case, however, the court already has determined that § 1988 does not mandate resort to this schematic once the fees have been paid. This court, therefore, looks to state law which generally controls licensing and regulation of attorneys and attorney-client relationships to see what other approaches may be identified.

Doyle has supported his argument that *quantum meruit* applies here with several opinions from Alabama courts. WCQP initially argued that Alabama law applied to this matter, asking this court to enforce an attorneys' charging lien under Alabama Code § 34-3-61 (a) and (b). *See* docket nos. 31 and 41. WCQP also cited the United States Court of Appeals for the Fifth Circuit opinion in *Nowell v. Dick*, 413 F.2d 1204, 1209 (5th Cir. 1969), saying that the "issue of attorneys' fees was to be determined under the

12

law of the state where the attorney-client relationship arose and the vast majority of attorney's work took place." Docket no. 31. WCQP later reversed it's choice of law argument, saying that it is owed a percentage of the total fee, relying on Mississippi Rules of Professional conduct and Mississippi law. Because the parties now espouse countervailing positions, each supported by the law of a different state, the court must determine which state's law applies to this dispute.

As a court sitting in Mississippi, this court applies Mississippi's choice of law rules. *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 n.2 (5th Cir. 2001). Mississippi has adopted the "center of gravity" test from § 6 of Restatement (Second) of the Conflicts of Laws (1971) ("Restatement") to decide choice of law questions. *Boardman v. United Services Automobile Assoc.*, 470 So.2d 1024, 1033 (Miss. 1985).

The factors embedded in Mississippi's center of gravity test are:

(a) the needs of the interstate and international systems;
(b) relevant policies of the forum;
(c) the relevant policies of other interested states and the relative interests of those states in the determination of a particular issue;
(d) the protection of justified expectations;
(e) the basic policies underlying the particular field of law;
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
*Mitchell v. Craft*, 211 So.2d 509, 516 (Miss. 1968) (citing § 6 of the Restatement).

The division of attorneys' fees between the attorneys handling this lawsuit may aptly be described as a contract or quasi-contract dispute because it deals with the agreement governing the relationship of the parties. In contract disputes, Mississippi courts may apply § 188 of the Restatement, which incorporates specific contract-related factors into the center of gravity test. *Id* at 1032. These factors are:

(a) the place of contracting,
(b) the place of negotiating the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Boardman*, 470 So.2d at 1032.

## B. Application of the Choice of Law Factors

This court finds that the factors, both the general factors derived from § 6 of the Restatement and those applicable to contract disputes found in § 188, weigh in favor of applying Alabama law. Following is the court's assessment of the key factors applicable to this case.

<u>General Factors</u>

1. Relevant policies of the forum

Although each state is concerned with management and regulation of its licensed attorneys, this court finds that Mississippi's interest is diminished since this case involves agreements and a division of fees between multiple Alabama attorneys, one of whom contracted with a client in Alabama to prosecute this case. This factor weighs in favor of applying Alabama law.

2. The relevant policies of other interested states and the relative interests of those states in the determination of a particular issue

Alabama has the primary interest here in arrangements between clients and attorneys and in the regulation and control of attorneys licensed in that State. The plaintiffs reside in Alabama and engaged an Alabama attorney to prosecute this case. The only contract governing these fees, was executed between Stephen K. Winters and the plaintiffs in Butler, Alabama. And as mentioned above, all of the attorneys involved here are based in Alabama.

3.  The protection of justified expectations

All three of the attorneys or law firms involved here–the referring attorney, WCQP and Doyle–are based in Alabama.  These attorneys, then, may be expected to be well-versed in the Alabama principles and law governing fees and fee agreements. Both Doyle and WCQP have argued in their papers that Alabama law governs this fee dispute, with WCQP subsequently changing its position in favor of Mississippi law.  The parties' own invocation of Alabama law demonstrates that all of the attorneys involved here expected Alabama law to apply.  For these reasons, this court finds that the parties had or should have had justified expectations that Alabama law would govern any fee dispute.

4.  Certainty, predictability and uniformity of result

This fee dispute is unusual in that it stems from a lawsuit where the fees are generally governed by federal law.  The court, however, has found that the federal law in question is not the only possible calculus to resolve this particular issue.  The court finds, therefore, that the best outcome in terms of predictability and uniformity will stem from the locale in which the attorneys practice, and where these attorneys are accustomed to contracting for and collecting fees.  This factor weighs in favor of applying Alabama law.

5.  Ease in the determination and application of the law to be applied

Doyle has cited cases from Alabama courts addressing very similar fact scenarios as this one.  WCQP has cited Mississippi case law, especially opinions evaluating the application of Mississippi Professional Rule of Conduct 1.5 which addresses attorneys' fees.  Alabama has a similar Rule 1.5 governing attorneys' fees.

The issue of whether a lodestar approach, *quantum meruit*, or an equitable division of fees is addressed equally by either state's law. This court finds that this factor is neutral, that it does not weigh in favor of the application of either of the state's laws.

Contract-Related Factors

Following is a discussion of the factors applicable to contract disputes:

1. The place of contracting

The contract between the referring attorney and the plaintiffs in this case was executed in Butler, Alabama. The clients, the referring attorney, WCQP, and Doyle all are located in Alabama.

2. The place of negotiating the contract

Plaintiff Steve Freeman, the administrator and legal representative of the decedent's estate, lives in Clarke County, Alabama. The decedent's estate was opened in the Probate Court of Choctaw County, Alabama. Plaintiff Deborah Thornton is the legal representative of the decedent's minor children, and lives in Clarke County, Alabama. All of the attorneys are also located in Alabama. Thus, the court presumes that the negotiations occurred in the State of Alabama.

3. The place of performance

Performance occurred in both Alabama and Mississippi. The complaint was filed in Mississippi. The time entries for WCQP indicate that some minimal work was done in Mississippi, but the bulk of the research and drafting of pleadings was conducted in Alabama.

4. The location of the subject matter of the contract

The subject matter of the contract involved legal representation and payment of

fees for work which took place in both Mississippi and Alabama.  The court finds that this factor does not weight in favor of either jurisdiction, but is neutral in this case.

> 5.  The domicile, residence, nationality, place of incorporation and place of business of the parties.

As discussed above, all attorneys involved in the current fee dispute, as well as the plaintiffs who were parties to the original fee agreement, appear to be residents of Alabama.  Both WCQP and the Doyle Law Firm are Alabama entities.

This court is persuaded by Mississippi's center of gravity test that Alabama law should govern this fee dispute.

## C.  Alabama Law Regarding Attorneys' Fees

Under Alabama law, when a firm has a contingency-fee contract with a client, if the client terminates the attorney-client relationship before the attorney is able to perform the service to fruition, that attorney "cannot recover on the contract, yet he may recover on a *quantum meruit* for the services which have been rendered [. . .]."  *Hall v. Gunter & Gunter*, 47 So. 155, 156 (Ala. 1908).  The Alabama appellate courts, in a number of cases analogous to this case, have awarded recovery in *quantum meruit*.  *See Gamble v. Corley, Moncus & Ward, P.C.*, 723 So.2d 627 (Ala. 1998); *see Gaines, Gains & Gaines, P.C. v. Hare, Wynn, Newell & Newton*, 554 So.2d 445, 448 (Ala.Civ. App. 1989) ("The rule in Alabama is that an attorney discharged without cause, or otherwise prevented from full performance, is entitled to be reasonably compensated only for services rendered before such discharge.  This appears to be the prevailing rule where the contract, as here, called for a contingent fee." (citations omitted)).

Jurisdictions across the United States recognize that a client may discharge his

attorney at any time and for any reason.  *See* Lester Brickman, <u>Setting the Fee When</u> <u>the Client Discharges a Contingent Fee Attorney</u>, 41 Emory L.J. 367 (Spring, 1992). Limiting a discharged attorney's fees to a *quantum meruit* recovery protects a client's right to discharge his attorney.  *See Fracasse v. Brent*, 494 P.2d 9, 10 (Cal. 1972) (finding that allowing a discharged attorney to recover as damages the full fee specified in his fee agreement was "inconsistent with the strong policy, expressed both judicially and legislatively, in favor of the client's absolute right to discharge his attorney at any time.").

An early New York Court of Appeals case set out the principle that because a client must be able to discharge his attorney, retainer agreements between clients and attorneys contain this right of the client as an implied term.  See *Martin v. Camp*, 114 N.E. 46, 48 (1916).  The court found that while the attorney could recoup the value of services rendered prior to the termination, the attorney could not collect damages for breach of contract, stating:

> That the client may at any time for any reason or without any reason
> discharge his attorney is a firmly established rule which springs from the
> personal and confidential nature of the relation which such a contract of
> employment calls into existence. [. . .]  If the client has the right to
> terminate the relationship of attorney and client at any time without cause,
> it follows as a corollary that the client cannot be compelled to pay
> damages for exercising a right which is an implied condition of the
> contract. [. . .] In such a case the attorney may recover the reasonable
> value of the services which he has rendered, but he cannot recover for
> damages for the breach of contract.  *Martin v. Camp*, 219 N.Y. 170, 174,
> 114 N.E. 46, 48 (1916) (internal citations omitted).

Courts also have denied recovery of a contingency-fee based on the rationale that the discharge prevented the attorney from fulfilling the condition for payment or the object of the contract.  A contingency-fee payment agreement is contingent upon

recovery by the client. *Fracasse v. Brent*, 6 Cal. 3d 784, 792, 494 P.2d 9, 14 (1972) (stating, "we believe that the attorney's action for reasonable compensation accrues only when the contingency stated in the original agreement has occurred—i.e., the client has had a recovery by settlement or judgment.").

Alabama courts have followed this same rule, finding that if the fee was contingent on the attorney's active participation or on the client's recovery, the attorney could not recover if he had been discharged before the fruition of the lawsuit and recovery by the client. *See Gaines, Gaines & Gaines*, 554 So.2d at 448 ("any contingent fee agreement between [the client], and the Gaines firm was terminated by [the client] in January of 1988. This discharge came long before the contingency was fulfilled...."). If an attorney is discharged prior to the client's recovery, even because of no fault of the attorney, the condition required for payment cannot occur. *Id*. This rationale applies to a fee splitting agreement between law firms which requires on-going active participation for a firm to receive a percentage of the total fee. *See Gamble v. Corley, Moncus & Ward, P.C.*, 723 So.2d 627, 631 (1998). If the client fires one of the law firms, that firm cannot fulfill its obligation of active participation and can only recover in *quantum meruit. Id*.

In this case, WCQP has presented no evidence that it had a contract under which it could recover. WCQP had no fee agreement with the referring attorney, Doyle, or the plaintiffs. Plaintiffs recognized WCQP as their attorney, however, and proceeded to litigate the underlying claim with that shared understanding with WCQP. Even without a contract, or a fee agreement, had WCQP carried this litigation to finality, WCQP would have been entitled to a fee. Since WCQP did not prosecute this litigation

to finality, but was discharged before that development, WCQP here falls within the bounds of that jurisprudence calling for recovery in *quantum meruit*. The question now remaining is how to calculate a *quantum meruit* recovery for WCQP.

## D. *Quantum Meruit* Recovery

Black's law dictionary defines *quantum meruit* as "[t]he reasonable value of services; damages awarded in an amount considered reasonable to compensate a person who has rendered services in a quasi-contractual relationship." A "recovery on a theory of *quantum meruit* arises when a contract is implied." *Brannan & Guy, P.C. v. City of Montgomery*, 828 So.2d 914, 920 (Ala. 2002). "The law implies a promise on the party knowingly accepting the benefit of services provided by another to pay a reasonable value for those services." *Id.*

Under Alabama law, *quantum meruit* fees are properly calculated "by employing the factors for a reasonable attorney's fee." *Id.* The Alabama Supreme court in *Peebles v. Miley*, 439 So.2d 137 (Ala. 1983), defined a set of factors which must be considered when determining a reasonable fee. 828 So.2d at 920 (citing 439 So.2d at 140-141). The factors outlined in the *Peebles* case are:

> the nature and value of the subject-matter of the employment; the learning, skill, and labor requisite to its proper discharge; the time consumed; the professional experience and reputation of the attorney; the weight of his responsibility; the measure of success achieved; [. . .] whether the fee is fixed or contingent; the nature and length of a professional relationship; the fee customarily charged in the locality for similar services [. . .]; the likelihood that a particular employment may preclude other employment; [and] the time limitations imposed by the client or by the circumstances.

Since the *Peebles* decision, Alabama court's have added a twelfth factor–the reasonable expenses incurred. *Madison Cty. Dept. Of Human Resources v. T.S.*, 53

So.3d 38, 54 (2009).  This list of factors is not exhaustive.  *Id.*  The court need not apply irrelevant factors, but should evaluate the award of attorneys' fees using those factors germane to the facts of the case.  *Van Shaack v. AmSouth Bank, N.A.*, 530 So.2d 740, 749 (Ala. 1988).  The trial court has broad discretion to determine the appropriate attorneys' fees, but must provide sufficient explanation of the application of these factors to allow meaningful review.  *Id; Madison Cty. Dept. Of Human Resources,* 53 So.3d at 54.

The *Peebles* court considered whether the fee arrangement was fixed or contingent.  In the *Peebles* case, the court awarded a contingency-fee to a debt collection attorney, despite the lack of specific terms allowing for a contingency-fee in the promissory note which the attorney was executing.  439 So.2d at 142.  The promissory note included an acceleration clause which said, "[i]t is further agreed that the undersigned shall pay all costs of collection, *including a reasonable attorney's fee*, on failure to pay any installment of principal and interest of the note on the date due hereof."  828 So.2d at 139 (emphasis added).  The plaintiff, who was the holder of the promissory note, entered into an agreement with the collection attorney, that the debtor would pay the collection attorney a percentage of the debt recovered.

The court stated that "[c]ounsel for defendants make much of the argument that defendants, in signing the note, did not sign to pay a contingent percentage fee, but signed to pay *a reasonable attorney's fee*.  We agree, but under the circumstances, these words may be synonymous."  *Id* (emphasis added).

The *Peebles* case, and its successors, have noted that the "first yardstick that is used by the trial judges [in assessing the reasonableness of an attorney-fee request] is

the time consumed." *Pharmacia Corp. v. McGowan*, 915 So.2d 549, 553 (Ala. 2004) (citing *Peebles*, 439 So. 2d at 141). Alabama's Supreme Court has criticized and reversed lower courts for failure to review the number of hours spent by an attorney when calculating the attorney's fee. *See id* at 556; *see Madison County Department of Human Resources*, 53 So.3d at 56 (stating "the absence of any time records makes it difficult to conclude that the fee of $262,500 was reasonable.").

The parties here seem to assume in their papers that a *quantum meruit* recovery is necessarily calculated by applying the lodestar method as is done under Title 42 U.S.C. § 1988 jurisprudence. This court, however, is not persuaded that using the lodestar is mandatory under Alabama law when calculating a fee recovered in *quantum meruit*. The Alabama Supreme court requires that a *quantum meruit* fee be calculated in the same way that a "reasonable attorney's fee" is calculated. As mentioned above, in the *Peebles* case, the Alabama Supreme Court awarded a contingency-fee as a "reasonable attorney's fee." 439 So.2d at 142.

Other states, such as Florida, have explicitly defined that a "reasonable attorney's fee" as one calculated using the lodestar method. *Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985) *holding modified by Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990) (stating that "We find the federal lodestar approach, explained below, provides a suitable foundation for an objective structure" to calculate attorneys' fees.). Florida courts, however, only require use of the lodestar method for fees imposed upon a losing party. *See Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So.2d 366, 368-369 (Fla. 1995). When determining a *quantum meruit* award in other circumstances, Florida courts "must take

22

into account the actual value of the services to the client," and consider "the totality of the circumstances" surrounding the litigation. *Id* at 369.

As discussed above, the key requirements for determining a reasonable fee under Alabama law is that the court consider the hours reasonably expended on the litigation and apply the *Peebles v. Miley* factors to determine if the total fee is reasonable. Further, *quantum meruit* is based in equitable principles to compensate one who justly deserves compensation in an amount that equates to the market value for that party's services.

## E. Caculation of WCQP's Fees and the *Peebles v. Miley* factors

WCQP has submitted the following time entries for hours and fee rates for attorneys and the paralegal who worked on this case:

| Name | Position | Hours | Rate | Total Fees |
|---|---|---|---|---|
| Samuel Fisher | Partner | 117.75 | $550.00 | $ 64,762.50 |
| Toni Braxton | Associate | 123.37 | $300.00 | $ 37,011.00 |
| James Doyle | Associate | 139.96 | $275.00 | $ 38,489.00 |
| Bennett | Paralegal | 3.50 | $125.00 | $ 437.50 |
| | Total | 384.58 | | $ 140,700.00 |

Doyle has responded by challenging many of these hours as being inadequately documented, excessive, or duplicative. *See* docket no. 43. He recommends compensating WCQP for a total of 239.36 hours for the attorneys who worked on this case. Docket no. 43 at 8. He would allow payment of an additional 25.75 hours at a recommended rate of $50 per hour for investigative work done by the paralegal and attorneys to locate witnesses. This adds up to a total of 265.11 hours. Doyle also challenges the hourly rates as excessive compared to local market rates in this district. Doyle has relied upon this court's opinion in *Alexander v. City of Jackson*, 2011 WL

1059293 (S.D.Miss. March 21, 2011), *aff'd*, 456 Fed.Appx. 397 (5th Cir. Dec. 30, 2011), where this court used the rates of $250 for a partner, $200 for an associate, and $100 for a paralegal. Doyle proposes paying WCQP the following:

| Name | Position | Hours | Rate | Total Fees |
|------|----------|-------|------|------------|
| Samuel Fisher | Partner | 63.50 | 250 | $  15,875.00 |
| Toni Braxton | Associate | 64.40 | 200 | $  12,880.00 |
| James Doyle | Associate | 111.46 | 200 | $  22,292.00 |
| Bennett | Paralegal | 0.00 | 100 | |
| | Investigative | 25.75 | 50 | $    1,287.50 |
| | | | | |
| | Totals | 265.11 | | $  52,334.50 |

Doyle proposed these hours, rates and total fee for WCQP in an early filing in this dispute, but has lowered his calculation of the fee due to WCQP to $46,334.50, and ultimately to $32,954.50, based upon additional objections. *See* docket nos. 43, 51, and 55.

Meanwhile, WCQP has amended its request from $140,700 based on a lodestar calculation to a share of the total fee of $350,000 in proportion to the time and effort it expended on this case versus the time expended by Doyle, in other words, based on an equitable division of the fee. After analyzing the activities engaged in by Doyle since leaving the firm, WCQP has asked that it be awarded 73% of the total fee, and Doyle receive 27%. Docket no. 61 at 5. WCQP argues that it expended at least 73% of the work on the merits which led to the ultimate settlement of the case.

As for calculations pertaining to himself, Doyle also has provided time entries, though he has not provided evidence regarding his skill, reputation, and experience.

Significantly, neither has he submitted a particular hourly rate; instead, he asks this court to reduce the hourly rate submitted by WCQP, multiply that rate by the hours

Doyle finds to be appropriate, calculate WCQP's fee, and provide Doyle the remainder of the money.  Clearly, under this clever lodestar approach, Doyle would derive a "windfall."

According to Doyle he has spent a total of 259.25 hours, after leaving WCQP, litigating this case and in efforts to resolve this fee dispute.  WCQP has reviewed Doyle's time entries and offered various challenges.  WCQP says that Doyle has mathematical errors in his time entries which increase his total time by 3 hours.  WCQP has categorized and summarized Doyle's hours as follows:

| | Hours Before Settlement | Hours After Settlement | Totals |
|---|---|---|---|
| Telephone Calls | 20.75 | 3.25 | 24.00 |
| Receive and Review | 27.25 | 59.25 | 86.50 |
| Drafts | 15.00 | 38.75 | 53.75 |
| Clerical | 5.00 | 0.00 | 5.00 |
| Research | 21.00 | 12.00 | 33.00 |
| Mediation | 34.00 | 0.00 | 34.00 |
| Hearings | 0.00 | 20.00 | 20.00 |
| Totals | 123.00 | 133.25 | 256.25 |

WCQP is unhappy with these hours submitted by Doyle, arguing that these hours do not tell the whole story.  WCQP asks this court to look at the value of the hours as they relate to the merits of the case, a point with which this court agrees, since this court is persuaded that not all hours expended are necessarily equal in value. When gazing at this dispute through a larger lens this court sees in passing another concern: any precedent which would encourage associates to rely on the knowledge, experience, and resources of a law firm until a case nears fruition, then to leave that

firm and enjoy a windfall by recruiting the client at the final hour of the litigation[10] indisputably would engender a relationship of distrust within law firms, and discourage firms from allowing frequent direct contact between associates and clients.

Accordingly, this court finds that WCQP's *quantum meruit* recovery appropriately should be calculated by comparing the time and effort expended by WCQP and the Doyle Law Firm, and compensating WCQP for its relative contribution to the outcome achieved in this lawsuit.

Following, the court has applied the *Peebles* factors to the facts here to determine a reasonable, proportionate fee:

1.     Nature and value of the subject matter of the employment

The attorneys here were employed to prosecute civil rights litigation in the matter of a woman who died in the custody of the Clarke County jail.  This factor supports awarding WCQP a proportion of the total fee because WCQP had prior experience and expertise in this specific type of litigation.  Further, the willingness of the plaintiffs to pay a premium of 50% of their recovery demonstrates the client's expectation about the value and risks associated with this type of work.

2.     The learning, skill, and labor requisite to its proper discharge

WCQP is a sizable law firm which employs more than 35 attorneys in offices in Birmingham, Alabama; DeLand, Florida; and Washington, D.C.  Docket no. 41-1, ¶ 1. The firm has a practice in civil rights litigation, and has litigated against government

_____

[10]   The court has no indication that Doyle acted in bad faith when he left the firm. Attorney Samuel Fisher says in his affidavit only that Doyle left the firm "involuntarily." *See* Fisher aff., docket no. 41-1.

entities and corporations. *Id* at ¶ 2. Doyle joined the firm on April 9, 2007, as a salaried associate, working under the supervision of partner Samuel Fisher. *Id* at ¶ 6. At the time, Samuel Fisher was handling the prison death case of *Bogus v. Alabama Department of Corrections, et al.* Case No. 7:06-CV-1667-RDP,[11] in the United States District Court for the Northern District of Alabama. *Id* at ¶ 7. According to Fisher, Doyle's past experience was primarily in the area of mass tort drug litigation. *Id* at ¶ 6. A friend of Doyle's, attorney Stephen K. Winters, referred this lawsuit to WCQP.

Doyle worked on this lawsuit until he left WCQP on April 23, 2010. *Id* at ¶ 8. During that time, he relied heavily on the knowledge, experience, and resources of WCQP to prosecute this case.

3.     The time consumed

The approach here is first to calculate a reasonable fee for WCQP. This court, however, has considered both WCQP's time entries and the number of hours expended by Doyle as relevant to the attorneys' relative contribution to the final outcome of this case. WCQP contributed a much higher percentage of time to bring this lawsuit to a resolution than did Doyle. The total hours in this lawsuit claimed by both the Doyle Firm and WCQP, before and after settlement, add up to 643.83 hours. This time includes the attorneys' efforts in this fee dispute. WCQP claims to have expended 384.58 hours or approximately 60% of the total hours. Doyle says he expended 259.25 hours or approximately 40% of the total time expended to prosecute this lawsuit and to litigate

---

[11] The *Bogus* lawsuit, also referred to as the *Agee* lawsuit, was brought on behalf of the family of a mentally ill prisoner who allegedly was beaten to death during an incident with prison guards at Donaldson Correctional Facility in Jefferson County, Alabama. Fisher aff., ¶ 8 n.1, docket no. 41-1.

this attorney fee dispute.

When considering only the time which led up to the settlement on January 18, 2011, WCQP contributed more than 70% of the hours to the litigation. To calculate these percentages, the court looked at just the hours that WCQP expended prior to its discharge, and disregarded hours invested in this fee dispute. WCQP has claimed 306.88 hours up to their discharge by the clients on May 5, 2010.[12] The court has considered Doyle's hours up to the point on January 18, 2011, when Doyle received the order from the Probate court approving the settlement. The court has disregarded his additional hours claimed after reaching that compromise between his clients and the defendants. Doyle's hours from the time he left WCQP until settlement add up to 123 hours. The total of WCQP's time before discharge and Doyle's time prior to settlement is 429.88.

Further, this court is convinced that not all hours are equal. The time entries show that the attorneys at WCQP who had prior experience in civil rights and prison death litigation worked extensively on this lawsuit and contributed significantly more time to researching the issues of this lawsuit and drafting the pleadings than did Doyle. Doyle complains that WCQP time entries show an excessive amount of time to draft the complaint. By Doyle's calculations, the WCQP attorneys (including Doyle) expended 53.95 hours, but this court counts 56.7 hours of work on the complaint from WCQP's time entries. The court calculates that Doyle expended 18.75 hours, Toni Braxton expended 35.2 hours, and Samuel Fisher expended 2.75 hours working on the

---

[12] The court deducted the time entries submitted by WCQP after May 5, 2010, from its total time submitted to the court.

complaint.  *See* docket no. 43-2 for time entries and Doyle's objections. researching,

drafting and revising the complaint before filing it.  Doyle has marked up and contested

these time entries in response to WCQP's filings.  *See* docket no. 43.

Doyle's work accounts for only 33% of the time spent on the complaint.  Toni

Braxton, an attorney who had worked for WCQP for 13 years, and focused on civil

rights law for 10 years, did the bulk of the research and drafting of the complaint.

Time entries related to the response to the defendant's motion for summary

judgment show a similar pattern.  Toni Braxton and Samuel Fisher provided research

and training for Doyle to be able to prosecute this case.  On February 19, 2010,

defendant Mary McClendon filed a motion for summary judgment based on qualified

immunity.  WCQP reports a 3.5 hour time entry for Doyle on February 19, 2010, during

which time he received and reviewed the motion for summary judgment filed by Mary

McClendon and researched related issues.  Docket no. 43-2 at 8.  Toni Braxton,

however, was the attorney who appears to have reviewed and summarized the

summary judgment evidence and drafted the brief in response to the defendant's

motion.  *See* docket no. 43-2.  Braxton's entries include the following:

| | | |
|---|---|---|
| 2/23/2010 | Reviewed Defendants motion for summary judgment; created Brief Outline | 2.75 |
| 3/3/2010 | Reading McClendon deposition | .75 |
| 3/4/2010 | Reading and summarizing McClendon deposition | 4.10 |
| 3/5/2010 | Summarizing depositions of six witnesses | 4.25 |
| 3/10/2010 | Drafting facts for response to Summary Judgment | 3.70 |

| 3/11/2010 | Drafting response to summary judgment; research on Defendants claim of Qualified Immunity | 5.00 |
| 3/12/2010 | Response to Summary Judgment (Deliberate indifference claim) | 3.10 |

This court is persuaded from a review of the time entries; the affidavits regarding the expertise and experience in civil rights litigation of WCQP, Samuel Fisher, and Toni Braxton; and the lack of evidence of this expertise on the part of Doyle, that Samuel Fisher and Toni Braxton trained Doyle in this area of law through the course of this litigation. While Doyle appears to have had litigation experience, he was the apprentice in this case.

Next, regarding the value of the hours expended here, the work done by WCQP brought this case to its final procedural posture before settlement. No work was done on the merits of the case after Doyle left WCQP. WCQP completed the legal arguments, the factual development, and the theory of the case before Doyle left the firm. All pleadings filed on behalf of the plaintiffs on the merits of the case were filed before Doyle left WCQP.

Doyle argues that he is due the majority of the attorneys' fees because he initiated settlement discussions, conducted mediation, and brought this lawsuit to resolution after leaving WCQP. Doyle's time entries after he left WCQP show that he spent much of his time communicating with the other attorneys and his clients. Doyle spent one hour on July 14, 2010, preparing a letter with a demand for settlement, then 7.5 hours preparing for the mediation on October 2, 2010. *See* time entries, docket no. 59-2. Between July and October, Doyle spent time communicating by phone and email

with the referring and opposing attorneys, the mediator, and his clients.  These activities

may have been necessary to settle this lawsuit, but Doyle's time entries do not reflect

any effort which could have appreciably altered the posture and strength of his client's

case after the discharge of WCQP.

Further, the court finds Doyle's method of time-keeping troubling.  Doyle has

submitted time entries in 15 minute increments.  The WCPQ entries appear to be in 6

minute increments, a practice that protects clients from being overcharged when an

attorney works on an activity that consumes only a few minutes.

In sum, the court finds that WCQP expended more time on this litigation than did

Doyle individually, and that WCQP's hours were of greater value to bringing this suit to

resolution.

4.      The professional experience and reputation of the attorney

This factors supports awarding an equitably proportionate share of the fee to

WCQP.  As discussed above, WCQP has demonstrated that it had the experience and

expertise required to prosecute this litigation.  WCQP has provided an affidavit from

Sarah Geraghty, a senior attorney with the Southern Center for Human Rights of

Atlanta, Georgia, a non-profit organization that advocates and litigates issues related to

the criminal justice system.  The affidavit avers that she is familiar with WCQP and its

work, as well as the work of Samuel Fisher and Toni Braxton on the case of *Estate of

Charles Agee v. Alabama Department of Corrections, et al.*, No. 7:06-CV-1667.[13]

---

[13] WCQP refers to this case as *Bogus v. Alabama Department of Corrections, et al.*
Linda Bogus was the administratrix of the Estate of Charles Agee.  Geraghty refers to the case
as *Estate of Charles Agee v. Alabama Department of Corrections, et al.*

Docket no. 41-3, ¶ 7. Geraghty states that WCQP has a national practice and does "extensive work in the fields of civil rights and employment rights." *Id*. She attests to WCQP having an "excellent reputation among the bar and judiciary," and says that "WCQP is one of a small number of law firms in the South with the skill, experience, resources and commitment to undertake cases involving prisoner abuse or neglect [. . .]." *Id*.

WCQP has also submitted an affidavit from client and fellow attorney Stephen C. Rubino. Docket no. 41-2. Rubino practices in the state of New Jersey and is the President and CEO of the Estate of Martin Luther King, Jr., a Georgia Corporation. *Id* at ¶¶ 1-2. Rubino states that he is familiar with attorney Samuel Fisher and WCQP, has consulted with them and hired attorneys Fisher and Braxton to perform legal services on behalf of the Estate of Martin Luther King, Jr. *Id* at ¶ 4.

The court also has found a recent opinion from the United States District Court for the Northern District of Alabama, in which the court awarded attorneys' fees, among others, to Samuel Fisher and Toni Braxton, in a class action employment discrimination lawsuit. *See Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542 (N.D.Ala. July 17, 2012).[14] The court stated:

> The court is familiar with the experience, reputation, and ability of Class Counsel and Defendant's counsel. Class Counsel have set forth their qualifications and prior experience in declarations. This case has, at all stages, been handled on both sides by very experienced and talented lawyers whose reputations for effective handling of complex litigation are well known throughout Alabama. *Id* at 17.

---

[14] The parties did not submit this case to the court. But the opinion is reported in Westlaw.

The court is satisfied that the experience and reputation of the WCQP attorneys involved in this case supports an award of a fee which is in proportion to a significant contribution to the positive outcome of this case.

5.      The weight of his responsibility

The court finds that this factor is not applicable in this case.

6.      The measure of success achieved

The plaintiffs recovered a sizable settlement in this case.  The degree to which the plaintiffs were successful may be attributed to both WCQP and the Doyle Law Firm. As mentioned above, however, this court is persuaded that the efforts of WCQP brought the lawsuit to the final procedural posture which led to settlement.  This factor weighs in favor of awarding WCQP a share of the total attorneys' fees, instead of a lodestar amount.

7.      Also, the reasonable expenses incurred by the attorney

Neither WCQP, nor Doyle expended significant expenses.  Doyle has claimed $2623 in expenses and WCQP has requested $6913.91 in expenses.  While Doyle was an associate at WCQP, he benefitted from the resources and overhead expenditures of WCQP.  Because neither firm had extraordinary expenses in this litigation, the court finds this factor inapplicable.

8.      Whether the fee is fixed or contingent

This factors weighs in favor of awarding a proportionate fee to WCQP because it bore a higher risk than Doyle.  The firm took the risk that it would have no recovery at the end of the lawsuit, while Doyle was fully compensated by his salary during his time at the firm.  Doyle had the benefit of senior attorneys who were knowledgeable in this

type of litigation, as well as the administrative and clerical resources of the firm from the start of the lawsuit until he left the firm in 2010. Doyle expended his own resources and risked his own income only while prosecuting this lawsuit from April of 2010 until its resolution in the beginning of 2011.

The contingency-fee agreement impacts the court's analysis in another way. The plaintiffs have paid a 50% contingency fee or $350,000. While the court does not pass on the reasonableness of the total fee, calculating WCQP's fee using the lodestar method would leave Doyle with an unearned windfall. If the court followed Doyle's recommendation, WCQP would receive a fee of $52,334.50 based on Doyle's lodestar calculation. Doyle would receive the remainder of the fee or $297,665.50. This would be equivalent to Doyle receiving almost $1,150 per hour. The court has calculated this rate by dividing $297,665.50 by Doyle's claimed hours of 259.25. In keeping with principles of basic fairness, the court is unwilling to make this type of award.

9. The nature and length of the professional relationship with the client

Neither Doyle, nor WCQP had a prior relationship with these clients. The court, therefore, finds this factor inapplicable.

10. The fee customarily charged in the locality for similar legal services

Other than the affidavits regarding WCQP's hourly rates, the parties have not submitted evidence as to the fee customarily charged in either Mississippi or Alabama for similar legal services. The court, then, declines to analyze this factor.

11. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer

The court finds this factor inapplicable.

34

12.     The time limitations imposed by the client or by the circumstances

The court finds this inapplicable.

Because the court has focused on the degree to which each firm's efforts have contributed to the outcome and has decided to award fees in proportion to this contribution, the court will consider the number of hours spent by WCQP before it was discharged on May 5, 2010, and compare that total to the hours spent by Doyle on this litigation up to the settlement date. This should provide a fair assessment of how much work was done by each firm to produce the ultimate outcome.

WCQP says it expended a total of 381.08 hours, but only 306.88 were expended before its discharge by the clients. Doyle says he expended a total of 123 hours from the time he left WCQP on April 23, 2010, until January 18, 2011, when Doyle received the order from the Probate court approving the settlement in this case. Docket no. 59-2 at 11.

Here is the calculation of the ratio of time spent on the case:

| WCQP thru discharge | 306.88 |
|---|---|
| Doyle after leaving WCQP | 123 |
| Total Time | 429.88 |
| | |
| % time by WCQP | 71% |
| % expended by Doyle | 29% |

## F.  Expenses

Doyle has requested $2623 in expense reimbursement. WCQP has not objected to any of these expenses. The court, therefore, awards Doyle the expenses he has requested.

WCQP has requested $6,913.91 in expenses. Doyle says he will stipulate to

reimbursement of all expenses incurred prior to WCQP's discharge, but objects to $1,003.76 in expenses after discharge. Docket no. 42 at 15. These expenses were incurred monitoring the case and in efforts to recover its fee. Efforts reasonably expended to recover attorneys' fees are compensable. *Wolff v. Royal Am. Mgmt., Inc.*, CV-11-351-N, 2012 WL 5303665 (S.D. Ala. Oct. 25, 2012) (citing *Martin v. University of South Alabama,* 911 F.2d 604, 610 (11th Cir.1990)). The court is persuaded to reimburse WCQP for its actual expenses requested.

## G.  Calculation of the Final Fee Award

The court has determined that each firm should recover all of its actual expenses in this litigation. The court therefore has calculated the fee award by deducting the firms' expenses first, and then dividing the fees based on the proportionate contribution of each firm to the outcome, with 71% of the balance awarded to WCQP and 29% to Doyle.

| | |
|---|---|
| Total Fee | $ 350,000.00 |
| WCQP's expenses | 6,913.91 |
| Doyle's expenses | 2,623.00 |
| | $ 340,463.09 |

| | |
|---|---|
| WCQP's fee - 71% | $ 241,728.79 |
| Doyle's fee - 29% | $   98,734.30 |

This court certainly appreciates that its calculated fee for WCQP exceeds WCQP's initial request for $140,700 in legal fees; however, WCQP essentially abandoned this particular request later in this fee dispute when it asked this court to "order a proper division of the attorneys' fees between Doyle and WCQP based on the proportion of work performed by each firm," without limiting the amount to $140,700. At that time WCQP requested an award of at least 73% of the total fee.

## IV. Conclusion

The court grants WCQP's motion to enforce attorneys' fee lien [docket no. 31] and denies the plaintiffs' motion to dismiss attorneys' charging lien [docket no. 39].

This court grants WCQP's motion to supplement [docket no. 41], and awards $241, 728.79 in attorneys' fees and $6,913.91 of costs to WCQP, for a total of $248,642.70. The balance of the fees held in the court's registry, in the amount of $2623 in expenses and $98,734.30 in attorney's fees or a total of $101,357.30, should be released to the Doyle Firm.

WCQP has filed two motions to compel [dockets nos. 47, 48] and a motion for discovery [docket no. 54]. The court finds these motions moot, as attorney Doyle has provided the information necessary for this court to rule on the division of the attorneys' fees.

Doyle has filed a motion for leave to file a response [docket no. 56]. This motion is granted. The pleadings and exhibits filed by Doyle have been considered by this court.

WCQP has filed a motion for extension of time to file response [docket no. 64], which this court grants. The court has considered the submissions [docket no. 61] that WCQP filed after the deadline specified in this court's prior order. The court denies Doyle's motion to strike WCQP's response [docket no. 65].

Finally, the court grants Doyle's motion to stay proceedings upon entry of this court's order [docket no. 69]. The court orders that the Clerk of Court stay disbursement of the funds in question in this order until further order of the court. The court shall allow 30 days from the date of this order for attorney Doyle to file any

37

relevant motions or appeals.  Should Doyle not file any motions or appeals seeking

relief from this order within 30 days, the undersigned will enter an order directing the

Clerk of Court to release the funds as detailed in this order.

**SO ORDERED AND ADJUDGED**, this, the 16th day of December, 2012.

_____/s/ Henry T. Wingate_____
**UNITED STATES DISTRICT JUDGE**

**Civil Case No. 4:08-cv-139-HTW-LRA**
**Memorandum Opinion and Order**